**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| PATRICIA LEE SWEENEY, | |
| Plaintiff, | |
| v. | Case No. 25-cv-1999-AHA-MJS |
| DANIELLE PENNINGTON, *et al.*, | |
| Defendants. | |

**<u>REPORT AND RECOMMENDATION</u>**

This is one of many cases involving a single piece of D.C. real estate on Quarles Street NE. After a foreclosure and an eviction forced Danielle Pennington from the property, Pennington has persisted with a litany of legal filings that seem designed to complicate the property's sale and broader use. By this Court's count, the legal quarrels over Quarles Street have now required the attention of more than a dozen judges—local and federal, trial and appellate—across the various courthouses in the District of Columbia. Among her more recent tactics, Pennington repeatedly tried to leverage a forged court order that purports to quiet title to the property in her favor, filing that falsified document in several court proceedings and with the Recorder of Deeds.[1]

The instant action started in the D.C. Superior Court as a straightforward lawsuit to quiet title to the Quarles Street property after Pennington's recordation of the forged court order. But in the time since Pennington removed the lawsuit to federal court, the landscape has shifted in several ways. Those developments prompted Plaintiff Patricia Lee Sweeney—a secured lienholder of the

---

[1] As explained below, the facts surrounding the forgery have been adjudicated by both the D.C. Superior Court and the D.C. Court of Appeals. In the latter instance, the Court of Appeals dismissed Pennington's appeal as a sanction for what it dubbed her egregious litigation misconduct in using the forged document. For the same reasons articulated in those prior cases, the undersigned readily agrees that the purported court order (filed on the docket here at ECF No. 9-5, among other places) is an obvious forgery.

property—to recalibrate her claims and the corresponding relief she seeks. At this juncture, Sweeney seeks declaratory relief cancelling a *lis pendens* that Pennington filed on the property and injunctive relief restricting Pennington from recording any further instruments affecting title to the Quarles Street property without first obtaining judicial approval (among other steps).

Alongside her latest complaint, Sweeney filed a motion for preliminary injunctive relief. Meanwhile, Pennington has moved to dismiss the case on the theory that Sweeney lacks standing or other legal capacity to proceed with her claims—or at least the ability to do so in a *pro se* capacity without retained counsel representing her. Several other motions are pending, too, including Sweeney's motion for remand (and a few others that the Court is resolving today through separate orders). For purposes of this ruling, and for the reasons that follow, the undersigned **RECOMMENDS** that the Court: (1) **DENY** Pennington's motion to dismiss (ECF No. 40); (2) **GRANT** Sweeney's motion for preliminary injunction (ECF No. 47), to the extent it seeks to enjoin Pennington from recording new instruments affecting title to the Quarles Street property absent prior court approval; (3) **CANCEL** the remaining *lis pendens* notice that Pennington filed in May 2026; and (4) **DENY** Sweeney's motion to remand (*see* ECF Nos. 54, 56).[2]

## RELEVANT BACKGROUND

This case is part of a larger tangle of litigation across the District of Columbia's local and federal courts. This Court does not endeavor to chronicle every detail of the decade-long saga, but instead focuses only on the relevant backdrop that bears on the matters presently at issue.

---

[2] The case is referred to the undersigned for full case management. (*See* Min. Order, Apr. 9, 2026.) Because the rulings at issue here are generally construed as ones involving dispositive (or at least pseudo-dispositive) relief, the Court resolves them through a report and recommendation ("R&R"). *See* 28 U.S.C. § 636; LCvR 72.3(a)(2), (3). Alongside this R&R, though, the undersigned is directly resolving several other pending motions by order because those matters are non-dispositive and fall comfortably within the ambit of U.S. Magistrate Judge jurisdiction under the governing statute and our Local Rules. *See* LCvR 72.2(a).

Pennington previously owned the Quarles Street property subject to a mortgage. In January 2015, Nationstar Mortgage initiated foreclosure proceedings against the property, and ultimately, the D.C. Superior Court ratified a 2018 foreclosure sale. *See generally Nationstar Mortg. LLC v. Pennington*, No. 2015-CA-000244-R(RP) (D.C. Super.). Nationstar bought the property through the sale, and in 2019, it commenced eviction proceedings in D.C. Superior Court against Pennington. In 2020, the Superior Court approved the eviction through a writ of restitution, but due to the COVID-related eviction moratorium in place at the time, Pennington was not immediately evicted. *See First Hand Land, LLC v. Pennington*, 2025 WL 4169235, at *1 (D.C. Super. Apr. 18, 2025) (summarizing the history of the eviction proceedings). Once the moratorium was lifted, Pennington "repeatedly postponed eviction proceedings," including by filing two bankruptcy actions that operated to stay eviction and by attempting—twice—to remove the Superior Court's eviction proceedings to federal court "despite the absence of any federal claims." *See id.* at *2.[3] During this period, First Hand Land, LLC ("First Hand") purchased the property from Nationstar, and in early 2025—after many different judges worked through the various bankruptcy- and removal-related matters—the Superior Court granted First Hand's request for a new writ of restitution to evict Pennington. *Id.* at *3–4.

With eviction imminent, Pennington turned to the D.C. Court of Appeals for emergency relief, but to no avail. So, on May 23, 2025—over a decade after the foreclosure proceedings against the property first began—Pennington was evicted. But that was not the end of this saga. Pennington persisted. And regrettably, her tactics became considerably more troublesome.

---

[3] These various federal cases were docketed as follows: *In re Pennington*, No. 23-bk-0158-ELG (Bankr. D.D.C.); *In re Pennington*, No. 24-bk-0250-ELG (Bankr. D.D.C.); *First Hand Land, LLC v. Pennington*, No. 24-cv-2597-RBW (D.D.C.); *First Hand Land, LLC v. Pennington*, 25-cv-1651-UNA (D.D.C.). Following the second remand, Pennington not only appealed that ruling to the D.C. Circuit, but she also sought rehearing *en banc*. Both efforts failed. *First Hand Land, LLC v. Pennington*, 2026 WL 981293, at *1 (D.C. Cir. Jan. 21, 2026) (dismissing appeal), *reh'g denied*, 2026 WL 968801 (D.C. Cir. Mar. 31, 2026).

About a week after her eviction, Pennington asked the D.C. Court of Appeals to reconsider its ruling. In doing so, Pennington submitted—and relied heavily on—a document purporting to be an order from U.S. District Judge Reggie B. Walton, who presided over one of Pennington's bankruptcy appeals (and who remanded Pennington's first effort to remove her Superior Court eviction proceedings to federal court). *See id.* Judge Walton's supposed order read as though it declared Pennington "'the lawful owner of the property, free and clear of' any liens." But Judge Walton never issued any such order or even decided anything along those lines.

After giving Pennington an opportunity to explain herself, the Court of Appeals concluded that the document was "plainly forged." *Pennington v. First Hand Land, LLC*, 349 A.3d 364, 366 (D.C. 2026). This conclusion adhered to a prior determination from the D.C. Superior Court in a parallel proceeding in which Pennington had submitted and relied upon the same falsified document. The D.C. Court of Appeals summarized that earlier finding as follows:

> [T]he Superior Court found the order to be "fraudulent" and "clearly false on its face" after noting: (1) the order was not reflected on the district court's docket in the case that Pennington represented it had been issued in; (2) it was inconsistent with the district court's disposition, dismissing the federal matter on March 20, 2025, four days before Pennington represented that it had granted quiet title in her favor; (3) it contained a clerk's attestation and an electronic date-stamp indicating that the order was e-filed on July 30, 2024, about eight months before the date on which the text of the order indicated it was issued (and about a month before the district court proceedings had even begun); and (4) Pennington had apparently registered the same forged court order with the District's recorder of deeds on May 28, 2025.

*Id.* More, the D.C. Court of Appeals added to that (already well-supported) rationale:

> In addition to the discrepancies already noted by the Superior Court in the parallel action, all of which are well-founded, we note (1) that the signature block on the forged order states that Judge Walton was "[s]itting by [d]esignation in the United States Bankruptcy Court for the District of Columbia," when in fact Judge Walton was not sitting in the bankruptcy court, but acting in his role as a United States District Judge when presiding over Pennington's federal case; (2) the forged order's electronic date-stamp aligns down to the second with an order to show cause that the federal bankruptcy court had issued before Pennington appealed the matter to the district court (issued on July 30, 2024, at 12:31:22), and the computer-generated

4

case number on the forged order—No. 24-00250-ELG—matches the case number assigned to the prior bankruptcy court proceedings as well; and (3) Pennington appealed Judge Walton's dismissal of her case on April 7, 2025, which would make no sense if Judge Walton had granted judgment in her favor as she represented.

*Id.* at 367. Before ruling, the D.C. Court of Appeals gave Pennington an opportunity to explain "why her appeal should not be dismissed as a sanction for forging the purported federal court order granting quiet title in her favor," but Pennington simply responded that "the accusations of fraud … are legally unsustainable." *Id.* at 366. Beyond that surface-level rejoinder, though:

> [Pennington] offered no explanation, aside from her apparent forgery, for how the purported federal court order came into existence. She did not dispute that the order does not appear on the district court's docket. She could not offer any innocent explanation for how that could be if the order were genuine. Nor could she explain the discrepancy between the date of issuance in the order's text and the date of the clerical attestation.

*Id.*

Accordingly, the D.C. Court of Appeals "conclude[d]—as the Superior Court did in the parallel action, and based on judicially noticeable facts and the uncontested evidence in the record—that the order Pennington submitted to this court is plainly forged." *Id.* And as a sanction, the court dismissed her appeal. *Id.* at 367–68. As the court put it:

> Pennington's misconduct is extreme. Pennington has submitted a blatantly forged court order to this court, which she has pressed as a standalone basis for ruling in her favor. Moreover, she has not acknowledged her misconduct, explained it, or expressed any contrition once pressed on it. Pennington's misconduct is further compounded by her submission of the same fraudulent order to the Superior Court in the parallel action and her registration of it with the District's recorder of deeds (constituting fraud, upon fraud, upon fraud).

*Id.* at 367. Although the court acknowledged Pennington's *pro se* status, it concluded with the obvious point that "one does not need a law degree or a bar license to know that forging court orders and submitting them in official court proceedings is egregious misconduct." *Id.* at 368.

Pennington's recent misconduct materialized in other ways, too. In the immediate aftermath of her eviction from the Quarles Street address by U.S. Marshals in May 2025,

5

Pennington reportedly "broke[] back into the property," which prompted the Superior Court to issue a stay-away order barring Pennington from coming within 100 feet of the property—in the same ruling that adjudicated the falsified court order to be a forgery. *See* Order, *Pennington v. First Hand Land, LLC*, No. 2025-CAB-2746, at 4, 5–6 (D.C. Super. Jun. 24, 2025) (Matini, J.). And as noted, Pennington separately recorded the forged order with the Recorder of Deeds around that same time. The Superior Court did not, at least at that juncture, resolve any clouds on title created by Pennington's recordation of the forged order because that issue was already the subject of a pending quiet title action, *see id.* at 5 n.4—specifically, this one.

This action is brought by Patricia Sweeney, the beneficiary of a deed of trust encumbering the Quarles Street property. (ECF No. 9-2.) Sweeney's original complaint sought to quiet title to the property following Pennington's recordation of the forged court order with the Recorder of Deeds. (ECF No. 1 at 13–14.)[4] Pennington removed the case to federal court in June 2025 based on diversity jurisdiction. (ECF No. 1.) Several months later, though, the Superior Court in the related case amended its June 2025 order (the one addressing the forged document) to add a specific description of the Quarles Street property, so that the amended order could be recorded to clear any remaining cloud on the title caused by the forged document. *See* Amended Order, *Pennington v. First Hand Land, LLC*, No. 2025-CAB-2746 (D.C. Super. Dec. 23, 2025). Based on that development, Sweeney views "the original quiet title claim [as] moot." (ECF No. 48 at 1.)

Still, Sweeney presses on. This is because the forged order is not the only instrument related to the Quarles Street property that Pennington has recorded. In July 2025, Pennington recorded a notice of *lis pendens* associated with a different lawsuit that she previously filed in this District.[5]

---

[4] Page citations are to those assigned by the Court's electronic filing system.

[5] "A *lis pendens* notice is designed to enable interested third parties to discover the existence and scope of pending litigation affecting the title to real property or asserting a mortgage, lien, security interest, or other

In that case, Pennington sued Nationstar Mortgage and a panoply of other defendants related to the foreclosure and eviction proceedings on the property. In January 2026, Judge Ali dismissed the case for failure to state any plausible claim (and, alternatively, based on the *Rooker-Feldman* doctrine insofar as Pennington was attempting to relitigate the propriety of the Superior Court's foreclosure proceedings). *Pennington v. Nationstar Mortg. LLC*, 2026 WL 145613, at *3 (D.D.C. Jan. 20, 2026), *aff'd*, 2026 WL 1991654 (D.C. Cir. July 2, 2026). Through her latest complaint in this action, Sweeney seeks a declaration cancelling the *lis pendens* notice associated with that now-dismissed lawsuit, and she requests prospective injunctive relief that would limit Pennington's future ability to cloud title on the property. (*See* ECF Nos. 48, 48-1.)

Given how these various cases have continued to unfold, there is no longer any need for this Court to consider cancelling the July 2025 *lis pendens* because Judge Ali already did that as part of the underlying case. *See* Order, *Pennington v. Nationstar Mortg. LLC*, Case No. 25-cv-568-AHA, ECF No. 73 (D.D.C. May 18, 2026) (cancelling the *lis pendens* and reasoning that Pennington's "case and appeal appear not to be grounded in any viable legal claim or argument"). But less than a week later, on May 24, 2026, Pennington recorded another *lis pendens*—this time, based on the instant case. (*See* ECF No. 54-2.) According to Sweeney, Pennington's practice of repeatedly recording these sorts of notices (and other documents, including the forged court order) is hampering any potential sale of the property. (ECF No. 54 at 4.) And Sweeney stresses that Pennington can easily perpetuate this pattern of filing successive *lis pendens* notices, given the

---

interest in real property." *Martin v. Santorini Cap., LLC*, 236 A.3d 386, 400 (D.C. 2020). Strictly speaking, "a valid *lis pendens* notice does not prohibit a transaction on the subject property," but in practice, it certainly complicates any potential sale because a "prospective purchaser" takes the property subject to the "outcome of litigation involving it." *Zhao v. Li*, 2022 WL 6727338, at *3 (D.D.C. Oct. 11, 2022).

multitude of lawsuits and appeals she continues to litigate in D.C.-area courts. (*See* ECF No. 54-7 (summarizing dozens of legal proceedings involving Pennington and the property).)

A few months back, Judge Ali referred this case to the undersigned for full case management. (Min. Order, Apr. 9, 2026.) There are currently a few substantive motions pending before the Court, including Pennington's motion to dismiss (ECF No. 40), Sweeney's motion for preliminary injunctive relief (ECF Nos. 47), and Sweeney's motion to remand (*see* ECF Nos. 54, 56). Through this omnibus report and recommendation, the Court tackles those motions in turn.

## ANALYSIS

### I.     Pennington's Motion to Dismiss

In March 2026, Pennington moved to dismiss or strike Sweeney's complaint on the basis that Sweeney "purports to prosecute this case in a representative capacity for Forge Trust Co. CFBO Patricia Sweeney IRA," and so cannot proceed in a *pro se* capacity without licensed counsel "appearing for any separate entity, trust-based account, custodial arrangement, or other representative interest." (*See generally* ECF No. 40.) Sweeney opposes, responding that she "is the real party in interest with respect to the claims asserted" and so is allowed to appear and represent herself *pro se*. (ECF No. 42 at 2.) On this record, Pennington's argument fails.[6]

Pennington is correct, as a general proposition, that business and organizational entities cannot represent themselves in litigation in a *pro se* capacity and "may appear in the federal courts

---

[6] As a technical matter, the Court recognizes that Pennington's motion was arguably directed at Sweeney's original complaint, which has now been superseded by the filing of the amended complaint. But the dynamic that Pennington is challenging through her motion—whether characterized as a real-party-in-interest issue, a standing question, or otherwise—is not pleading-specific but focuses more broadly on Sweeney's ability to proceed with her claims in a *pro se* capacity generally, and the same underlying dynamic that gives rise to Pennington's arguments remains even after amendment. So, for the sake of practicality and efficiency, especially since the undersigned is handling this case on a referral basis, the Court finds it appropriate to address the issue now rather than requiring Pennington to make the same argument again through a refiled motion in the wake of Sweeney's amended complaint.

only through licensed counsel." *Greater Se. Cmty. Hosp. Found., Inc. v. Potter*, 586 F.3d 1, 4 (D.C. Cir. 2009) (citing *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201–02 (1993)). But Pennington fails to show that this case presents such a circumstance.

Even though Sweeney is proceeding on behalf of "Forge Trust Co. CFBO Patricia Sweeney IRA"—language that mirrors a provision in the underlying deed of trust, as Pennington notes (ECF No. 40 at 3)—the relevant context reflects that Sweeney herself remains the real party in interest. *See* Fed. R. Civ. P. 17(a)(1). This is because the language at issue, while admittedly a bit technical, essentially just reflects that Sweeney lent money through what appears to be described as a self-directed IRA. *See, e.g.*, *Hudak v. Apostolate for Fam. Consecration, Inc.*, 2023 WL 5670713, at *7 (W.D. Pa. July 26, 2023) (construing similar language, "Equity Trust Company Custodian FBO Michael J. Coniker IRA," the same way in a *pro se* litigated case). Pennington herself seems to acknowledge as much: in her motion, she points the Court to a prior, unrelated lawsuit involving Sweeney to show that Sweeney "previously appeared in litigation involving [a] self-directed IRA[.]" (ECF No. 40 at 4.) In other words, Pennington appears to be arguing that this case is another instance of Sweeney litigating matters involving a self-directed IRA. And as numerous courts have recognized, in the context of a self-directed IRA, "the owner or beneficiary of the IRA acts as a trustee for all intents and purposes" and therefore has "standing to sue on behalf of his or her own IRA." *Hudak*, 2023 WL 5670713, at *7; *see also FBO David Sweet IRA v. Taylor*, 4 F. Supp. 3d 1282, 1285 (M.D. Ala. 2014); *Pensco Tr. Co. FBO Jeffrey D. Herman IRA v. Delfierro*, 2017 WL 3454570 at *3 (W.D. Wash. Aug. 11, 2017); *Deem v. Baron*, 2016 WL 8230425, at *2 (D. Utah Apr. 14, 2016). Thus, because the record strongly suggests that Sweeney is proceeding on behalf of a self-directed IRA set up for her benefit, Pennington's argument that Sweeney is not the real party in interest or otherwise lacks standing cannot carry the day. And that means, in turn,

9

that Pennington fails to demonstrate that the Court should dismiss or strike Sweeney's complaint on the premise that she is impermissibly litigating in a *pro se* capacity without separate counsel.

## II.    Sweeney's Motion for Preliminary Injunctive Relief.

At the same time Sweeney moved for leave to file her amended complaint, she filed a motion for a temporary restraining order and preliminary injunction that asks the Court to: (1) enjoin Pennington from recording any additional instruments affecting title to the Quarles Street property without advance court approval; and (2) cancel the July 2025 *lis pendens* that Pennington previously filed on the property. (*See* ECF No. 47.) The undersigned need not engage with the second request in the current posture because, as noted previously, Judge Ali already cancelled the July 2025 *lis pendens* through a May 2026 order issued in the underlying litigation itself (Case No. 25-cv-568). So that leaves Sweeney's request for preliminary injunctive relief to place judicial guardrails around Pennington's ability to record future instruments concerning the Quarles Street property. For the reasons explained below, the undersigned recommends that the Court **GRANT** a preliminary injunction, albeit not on all the terms Sweeney proposes.[7]

"A plaintiff seeking a preliminary injunction must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Court takes each factor in turn.[8]

---

[7] Given the gravity and expansiveness of Pennington's past tactics, the undersigned considered recommending a permanent injunction at this juncture, *see Zhao*, 2022 WL 6727338, at *4, but ultimately concluded that preliminary relief strikes the appropriate balance—at least for now.

[8] Because the recommended injunction does not implicate genuine disputes of material fact as to the relevant issues supporting relief—but hinges instead on Pennington's previously adjudicated litigation misconduct and the uncontroverted and public-record aspects of Pennington's misuse of the *lis pendens* process—the undersigned concludes that no evidentiary hearing is required prior to the issuance of the recommended preliminary injunction. *Cf. Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004).

### A.      Likelihood of Success on the Merits

First, the Court finds that Sweeney is likely to prevail on her injunctive-relief claim at the conclusion of the case—*i.e.*, securing a set of judicially imposed limitations on Pennington's ongoing ability to record documents affecting title to the Quarles Street property, especially given Pennington's demonstrated track record of abusing the judicial process through her serial filings, reliance on a forged court order, and more. Two recent cases from this District illustrate why: *Sutton Invs. LLC v. Perlmutter*, 2021 WL 6062635 (D.D.C. Dec. 22, 2021), and *Zhao v. Li*, 2022 WL 6727338 (D.D.C. Oct. 11, 2022), *appeal dismissed*, 2024 WL 996161 (D.C. Cir. Mar. 4, 2024).

*Sutton Investments* arose amid an inheritance dispute between two sisters, Dawn Perlmutter and Trina Varone, during the distribution of their late mother's estate. The estate included Sutton Investments, a company that "own[ed] a significant amount of property" in Washington, D.C. *See Sutton Invs.*, 2021 WL 6062635, at *2. Believing her sister "deprived her of her rightful inheritance" in the company and its property holdings, Perlmutter "filed lawsuit after lawsuit contesting Varone's entitlement to the company and the accompanying property." *Id.* Based on one of these lawsuits, Perlmutter (and another individual) recorded a notice of *lis pendens* against the property at issue. After the case was dismissed, Perlmutter filed a new action and a corresponding notice of *lis pendens* within days. So, Sutton Investments sued to cancel the *lis pendens* and enjoin Perlmutter from recording further notices against the property. *Id.* at *2–3. The court granted that relief. Relevant here, it found that Sutton Investments was likely to succeed on the merits of any potential claims brought against the property moving forward because of Perlmutter's demonstrated "propensity to file frivolous and duplicative lawsuits," which "[c]ourt after court ha[d] found meritless." *Id.* at *6. As to irreparable injury, the court agreed that the serial *lis pendens* notices interfered with a contract for sale that was soon scheduled to close. *Id.* And the balance of

11

equities and public interest tilted in favor of relief, too, because Perlmutter had "years in court" and "lost at every turn," with the court explaining that it "did not take, and should not have taken, multiple judicial opinions" to make clear that she had no valid interest in the property. *Id.* At bottom, *Sutton* reflects that the sort of interim injunctive relief requested here is appropriate when a defendant had no remaining viable interest in real property but continues to use serial litigation and notices of *lis pendens* to keep the property tied down in litigation. *See id.*[9]

*Zhao* similarly involved a pattern of harassing litigation over real estate. The plaintiffs, an investor named Yan Zhao and four business entities, frivolously claimed to own a luxury hotel in Washington, D.C. *Zhao*, 2022 WL 6727338, at *1. Broadly speaking, they alleged that various actors "conspired with the Chinese government to illegally expropriate [certain] properties," including the hotel at issue. *Id.* After the court dismissed their claims, the plaintiffs filed two *lis pendens* notices and advised at least one third party involved in a potential sale of the property that the notices prevented the sale. *Id.* at *2–3. On a subsequent motion for relief, the court canceled the *lis pendens* notices and enjoined the plaintiffs from recording any future notices without leave of court. *Id.* at *3–4. In doing so, the court explained that its "inherent authority include[d] the 'power to employ injunctive remedies' against litigants 'when needed to protect the integrity of the courts and the orderly and expeditious administration of justice.'" *Id.* at *4 (citing *Chien v. Freer*, 2021 WL 5507695, at *2 (D.D.C. Nov. 23, 2021)). And while recognizing that the type of injunction imposed was more typical in the context of "restrictions on a litigant's ability to file lawsuits, motions, or the like," the court found that the recording-related injunction was a tailored

---

[9] The *Sutton Investments* court opted for a temporary restraining order rather than a preliminary injunction, in large part because it was not clear that Perlmutter (and the other named defendant) had received notice of the lawsuit and the relief requested. *See Sutton Invs.*, 2021 WL 6062635, at *5 n.2. The same is not true here. Pennington has been participating in these proceedings from the get-go—and is the party who removed the case to this Court—and she filed an opposition to Sweeney's motion for injunctive relief.

and "reasonable response to the problems and needs confronting the court's fair administration of justice" on the particular facts of that case, given the "frivolous and harassing" pattern of litigation and accompanying notices of *lis pendens*. *See id.*

The principles animating the relief awarded in *Sutton Investments* and *Zhao* apply with essentially equal force here. Over the course of a decade, Pennington has litigated her various claims about the Quarles Street property through multiple foreclosure, eviction, bankruptcy, and other proceedings. Even assuming for argument's sake that the bulk of Pennington's litigation pursuits over those years were grounded in good faith, her more recent tactics reflect the opposite. Most glaringly, after losing her eviction proceedings in D.C. Superior Court and the D.C. Court of Appeals, Pennington took the remarkable step of filing a forged court order with both tribunals. More, Pennington separately recorded the forgery with the Recorder of Deeds. As the D.C. Court of Appeals saw things, Pennington's misconduct was "extreme" and "egregious"—behavior that the court characterized as "fraud, upon fraud, upon fraud." *Pennington*, 349 A.3d at 367–68. Even more striking, that court compared Pennington's misconduct to the criminal offense of "obstruction of justice." *See id.* at 367 (citing D.C. Code § 22-722(a)(6)). Pennington's repeated misuse of that forged court order is at least as significant an abuse of the judicial (and judicial-adjacent) process as was the improper use of the *lis pendens* notices in *Zhao*—if anything, considerably more so.

Pennington's misconduct in recording the forged order with the D.C. Recorder of Deeds is what triggered this case in the first instance, leading Sweeney to file suit to quiet title to the property after Pennington clouded it with the forged order. And although the Superior Court subsequently cleared that specific cloud on the title, Pennington has continued to gum up the works. In July 2025, she recorded another *lis pendens* notice related to the lawsuit Judge Ali dismissed earlier this year. Judge Ali then canceled the *lis pendens* notice after finding that

13

Pennington's underlying "case and appeal appear not to be grounded in any viable legal claim or argument." Order, *Pennington v. Nationstar Mortg.*, No. 25-cv-568, Dkt. 73 (D.D.C. May 18, 2026). And at that point, Pennington's step in recording a new *lis pendens* mere days later provides another clear demonstration of her ongoing obstructionist tactics.

These tactics are also, by their nature, frivolous. The new *lis pendens* concerns the present lawsuit, even though the only arguable cloud(s) on the Quarles Street property's title implicated in this case had already been adjudicated by other courts—the recordation of the forged court order had already been voided by the Superior Court, and the recordation of the July 2025 *lis pendens* had already been cancelled by Judge Ali. With that context in mind, the only legal question that is still really in dispute here is whether Sweeney is entitled to some sort of lasting, forward-looking relief that would limit Pennington's ability to record future instruments that might cloud the property's title. In other words, Pennington's latest *lis pendens* only serves to put the public on notice that this Court is being asked to limit Pennington from recording more makeweight notices like the one they would already be reviewing. This is a classic example of the potential abuse of the *lis pendens* process that the D.C. Court of Appeals has warned against: activity resulting in real property "being tied up for years even if the claimant's case is weak" (or even specious). *Garcia v. Tyger*, 295 A.3d 594, 602 (D.C. 2023). In fact, the filing and recordation of *lis pendens* notices that do not actually assert any "legally protected interest" in real property, but that are instead designed to hamper the otherwise legitimate sale and use of the property, may even give rise to civil liability. *See, e.g.*, *Capel v. Wright*, 2024 WL 4332109, at *14–15 (D.D.C. Sept. 27, 2024).

For these reasons, the Court believes Sweeney has shown a substantial likelihood of ultimately prevailing on her claim for injunctive relief against Pennington, whether based on the

14

Court's general equitable powers or its inherent powers to prevent abuses of the judicial process. *Zhao*, 2022 WL 6727338, at *4; *Sutton Invs.*, 2021 WL 6062635, at *5–7.

### B.    Irreparable Harm

Second, the Court agrees that Sweeney faces irreparable harm absent preliminary injunctive relief. As in *Sutton Investments*, the record here reflects that Pennington's ongoing practice of recording groundless filings with the Recorder of Deeds—whether forged court orders, *lis pendens* notices premised on already-adjudicated claims, or otherwise—serves to repeatedly cloud title and affects the ability to refinance, insure, or sell the property. (*See* ECF No. 47; ECF No. 47-4 ¶¶ 4–6 (declaration of First Hand articulating this impact).) As Sweeney describes it, the property is currently up for sale, but Pennington's repeated filings scare off potential buyers. (*See* ECF No. 54 at 4.) Admittedly, the evidence in this case concerning a future or imminent sale is not as clear-cut as in *Sutton Investments*, but even still, the years-long pattern that provides the backdrop for this dispute reflects why intermediate relief is warranted and appropriate. By the time Sweeney (or First Hand) could complete the often time-consuming and resource-intensive process of clearing the property's title through the normal course in court, Pennington can simply file another *lis pendens* notice to re-cloud the property title almost immediately. This is borne out, once again, by Pennington's recent actions: After Judge Ali canceled Pennington's prior notice on May 18, 2026, Pennington filed another notice tied to this case just six days later. Simply put, the Court agrees that Pennington's longstanding pattern of vexatious conduct is jeopardizing the legitimate sale of the property and irreparably harming Sweeney and others in the process.

### C.    Balance of the Equities

Third, the Court likewise believes that the balance of equities favors a preliminary injunction along the lines that Sweeney seeks. Limiting Pennington's ability to record new

documents affecting title to the property will benefit Sweeney (and others with a valid interest in the property) in that she will no longer have to shoulder the time and expense of serial court proceedings to cancel or void title-related instruments that Pennington files. On the other hand, Pennington has already had ample opportunity to litigate any potentially legitimate claims she may have related to the property, and she has "lost at every turn." *Sutton Invs.*, 2021 WL 6062635, at *6. Plus, in the event that Pennington might in the future have some newfound and legitimate claim concerning the property that has not already been adjudicated and resolved against her, the Court's proposed injunction would not prohibit her from litigating that hypothetical claim. And neither would it prohibit her from recording a *lis pendens* notice; Pennington would simply need to first secure leave of court—by demonstrating a viable, legitimate, and good-faith basis for her proposed filing—before she could record anything else related to the property moving forward.

### D.    The Public Interest

Fourth, and finally, the Court agrees that the public interest favors a tailored injunction on this record. As the *Sutton Investments* court succinctly put it: "The public has an interest in courts protecting property owners from vexatious and frivolous litigation." 2021 WL 6062635, at *6. This Court agrees. And that rationale extends even more naturally to a situation where a litigant has demonstrated a repeated willingness to abuse the judicial process so thoroughly as here—by filing and relying on a falsified court document across multiple tribunals.

*    *    *

After considering the record as a whole and balancing the relevant equities—and with a keen focus on protecting the integrity of the judicial process—the undersigned recommends that the Court enter a preliminary injunction preventing Pennington (and any of her potential agents) from recording any further instruments against the property without leave of court. Further, the

16

Court's order should state that any instruments Pennington might attempt to record without adhering to this advanced-leave-of-court requirement will be void *ab initio.* Given these conditions, the undersigned does not separately think it necessary, as Sweeney suggests (ECF 47-7 at 2), to require Pennington to post a monetary bond in addition to securing leave of court.[10]

## III.   Cancelation of the Current *Lis Pendens*

Even with a preliminary injunction limiting Pennington's future ability to record, the recently filed May 2026 notice of *lis pendens* (Instrument No. 20260519028) still lingers. But for essentially the same reasons just explained, the Court should cancel that notice now, too.

Relevant here, under the District of Columbia's *lis pendens* statute, a court may cancel a *lis pendens* "prior to the entry of judgment" upon finding that "(A) [t]he moving party will suffer an irreparable injury if the notice is not cancelled; (B) [t]he moving party has demonstrated a substantial likelihood of success on the merits in the underlying action or proceeding; (C) [a] balancing of the potential harms favors the moving party; and (D) [t]he public interest favors cancelling the notice." D.C. Code § 42-1207(h)(2). These factors virtually mirror the requirements for a preliminary injunction that the Court just analyzed. (*See supra* § II.) And for the same reasons just outlined above, application of those factors to the remaining *lis pendens* notice confirms that

---

[10] One final consideration is the potential of a bond for Sweeney. *See* Fed. R. Civ. P. 65(c). In granting preliminary injunctive relief, courts retain "broad discretion" in determining the amount of a bond, and under appropriate circumstances, may even "require no bond at all." *Sutton Invs.*, 2021 WL 6062635, at *6 n.4 (quoting *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999), then citing *Council on American–Islamic Rels. v. Gaubatz*, 667 F. Supp. 2d 67, 80 (D.D.C. 2009); *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 759 (D.C. Cir. 1980)). In particular, it can be especially appropriate to excuse a bond "where there 'has been no proof of likelihood of harm'" to the party enjoined. *Fed. Prescription Serv., Inc.*, 636 F.2d at 759 (citation omitted). Because Pennington does not seem to have any non-frivolous reason to record an instrument against the property, the Court sees little risk of her sustaining any harm from the proposed injunction. Plus, any conceivable harm can be mitigated by the proposed injunction's terms, which would allow the Court to grant leave to record an instrument concerning the property if Pennington can demonstrate a valid reason to do so. The undersigned recommends excusing any bond requirement here.

immediate cancellation is warranted. *See also* Order, *Pennington v. Nationstar Mortg.*, No. 25-cv-568, ECF No. 73 (May 18, 2026) (applying similar analysis to cancel the July 2025 *lis pendens*).

## IV.     Sweeney's Motion for Remand

Finally, embedded in one of Sweeney's recent filings is a request to remand the case to D.C. Superior Court based on the "overwhelmingly local nature of the remaining disputes." (ECF No. 54 at 4.) The Court should deny this request. Even acknowledging Sweeney's point, she ignores that Pennington's removal of the case—and this Court's ensuing exercise of subject-matter jurisdiction—is predicated on diversity-of-citizenship jurisdiction under 28 U.S.C. § 1332. And Sweeney fails to demonstrate or even really argue that diversity jurisdiction is somehow newly lacking, and the Court does not independently see any basis to find that to be so. Sweeney already unsuccessfully moved to remand the case once (*see* ECF No. 33; Min. Order, Mar. 25, 2026), and nothing she says in her latest filing would support a different result now.

## CONCLUSION AND RECOMMENDATION

The undersigned **RECOMMENDS** that the Court: (1) **DENY** Pennington's motion to dismiss (ECF No. 40); (2) **GRANT** Sweeney's motion for preliminary injunction (ECF No. 47), to the extent it seeks to enjoin Pennington from recording new instruments affecting title to the Quarles Street property absent leave of court; (3) **CANCEL** the *lis pendens* notice Pennington filed in May 2026; and (4) **DENY** Sweeney's motion to remand (*see* ECF Nos. 54, 56).

Dated: July 24, 2026

_____
MATTHEW J. SHARBAUGH
United States Magistrate Judge

18

\*          \*          \*

The Court hereby advises that, pursuant to 28 U.S.C. § 636(b)(1)(C) and LCvR 72.3(b), any party who objects to a report and recommendation must file a written objection within fourteen (14) days of the party's receipt of the report and recommendation. The written objections must specifically identify the portion of the report or recommendation to which objection is made and the basis for such objections. Failure to file timely objections to the findings and recommendations set forth in this report may waive that party's right of appeal from an order of the District Court that adopts such findings and recommendations. *See Thomas v. Arn*, 474 U.S. 140 (1985).